UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN BRUNTJEN,

      Plaintiff,

v.                                         Case No. 1:20-cv-511
                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

On August 17, 2017, plaintiff protectively filed an application for DIB, alleging a disability onset date of December 7, 2013. PageID.45. This appears to be plaintiff's fourth application for benefits, with previous applications being filed in 2009, 2012, and 2015. PageID.47. In the present application, plaintiff identified her disabling conditions as a back injury, psoriasis, lymphedema, degenerative bone disease in the hips, depression, migraines, and arthritis. PageID.333. Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a warehouse worker. PageID.62. Administrative Law Judge (ALJ) Michael S. Condon reviewed plaintiff's application de novo and entered a written decision denying benefits on May 9, 2019. PageID.45-64. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I.        LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff last met the insured requirements of the Social Security Act on March 31, 2014.  PageID.49.  The ALJ also found that plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 7, 2013, through her date last insured of March 31, 2014.  PageID.49.  Based on this record, the relevant time period under consideration in this appeal is about four months, beginning on December 7, 2013, and ending on March 31, 2014.

At the second step, the ALJ found that through the date last insured, plaintiff had the following severe impairments:  lumbar degenerative disc disease with mild stenosis; left lower extremity mild great saphenous vein insufficiency with swelling; and morbid obesity.  PageID.49. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.53.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently and sit, stand, and/or walk for up to 6 hours total each in an 8-hour workday with normal breaks. She can occasionally climb ramps and stairs, occasionally ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl.

PageID.54.

ALJ Condon also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.61. In reaching this determination, ALJ Condon reviewed the record, disagreed with the findings of past ALJs, and re-classified plaintiff's past relevant work.

In previous decisions, the ALJs classified this work as the unskilled, light to medium exertional job of "feeder/packer" and found that plaintiff was able to perform this work. PageID.62. In the present decision, the ALJ found that the proper classification of plaintiff's past relevant work was "warehouse worker," which is unskilled and performed at the medium exertional level. PageID.62. Given this new classification, the ALJ found that plaintiff was unable to perform her past relevant work based on her residual functional capacity (RFC), which limited plaintiff to light exertional work.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.63-64. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as cashier (799,000 jobs), fast food worker ("more than 1,000,000" jobs), and counter attendant (44,000 jobs). PageID.63. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 7, 2013 (the alleged onset date) through March 31, 2014 (the date last insured). PageID.64.

## III.    DISCUSSION

Plaintiff has raised four errors on appeal.[1]

### A.    The ALJ committed reversible error by failing to provide a fresh review of the evidence as required by case law.

Plaintiff contends that the ALJ failed to provide her with a "fresh look" with respect to her present (fourth) application for disability as required by *Earley v. Commissioner of Social*

---

[1] The Court notes that plaintiff ended her brief with a one-sentence argument seeking an award of benefits under the medical-vocational guidelines or grids. Plaintiff's Brief (ECF No. 18, PageID.935). This issue was not identified in the Statement of Errors. Plaintiff also "reserved the right" to raise another unidentified error in her reply brief ("whether the ALJ was properly appointed") in her reply brief. These unidentified errors, which were not adequately briefed, are waived. *See* Notice (ECF No. 13, PageID.906) ("Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue.").

*Security*, 893 F.3d 929 (6th Cir. 2018). "When an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933.  In performing this new review, the court cautioned that,

> Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making.

*Id*. at 934.

Here, ALJ Condon addressed the res judicata effect of the previous ALJ decisions as follows,

> The prior decisions of May 9, 2011, and December 6, 2013, mandate consideration of Acquiescence Rulings 98-3(6) and 98-4(6). These Acquiescence Rulings, as well as current case law in the Sixth Circuit, direct that an Administrative Law Judge must adopt findings from the final decision by an Administrative Law Judge or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding. For purposes of the Acquiescence Rulings, "new" evidence includes a new fact that automatically results from the passage of time and it can include testimony that was not presented in the previous proceeding. If there is new evidence, it is "material" if the evidence both differs from that presented in the previous claim and warrants a finding different from that made in the previous decision.
>
> As demonstrated below, the record contains new and material evidence in connection with the claimant's current applications that supports some different findings than have been assessed by the prior Administrative Law Judge. Therefore, the undersigned does not adopt all the findings in the prior decision because there is new and material evidence related to some of these findings. For example, the medical evidence of record contains new and material evidence demonstrating an additional medically determinable impairment of hypertension. However, this impairment is not severe because it does not impose more than a minimal limitation on the claimant's physical or mental ability to engage in basic work activities (20 CFR 404.1520(c)). The listed impairments have changed since the prior decisions, including the listings for evaluating mental impairments. Based on the testimony of the vocational expert and the claimant, the undersigned finds there is new and material evidence to justify not adopting the prior classification of the claimant's past work. Based on the new and material evidence regarding the claimant's past work, the undersigned finds there is new and material evidence to support not adopting the prior findings that the claimant is able to perform her past work as it

is generally performed. There is also new and material evidence with regard to the claimant's age, such that the claimant attained age 50 on February 9, 2014. However, there is no new and material evidence with regard to work activity after the alleged onset date. There also is no new and material evidence with regard to the claimant's severe impairments. Judge Prothro noted a severe impairment of intermittent discomfort of the left lower extremity, indicating this was due to chronic venous insufficiency (Ex. DlA/6-7). In her December 2013 assessment, Judge Grit accurately considered the relevant Acquiescence rulings, and clarified the claimant's severe impairments to include left lower extremity mild great saphenous vein insufficiency with swelling because pain is a symptom and not an impairment (DlA and D3A; *See also* 20 CFR 404.1529). As noted above, the undersigned has determined the medical evidence of record contains new and material evidence with regard to hypertension; however, this impairment is not severe and there is no material objective evidence to support limitations that are more restrictive because the previously assessed restrictions are consistent with the medical evidence of record for the period from December 7, 2013 through March 31, 2014.

PageID.46-47 (emphasis added).

Plaintiff contends that "Acquiescence Rulings 98-3(6) and 94-4(6), no longer appear to be applicable at least in part due" to *Earley*.  Plaintiff's Brief at PageID.928.  Plaintiff's conclusory argument does not address the reasoning in *Earley* in any detail.  As discussed, *supra*, ALJ Condon gave this claim "fresh look", which included re-classifying the nature of plaintiff's past relevant work.  Accordingly, this claim of error is denied.

### B.    The ALJ committed reversible error by failing to properly weigh the medical evidence and by compiling an erroneous RFC for plaintiff.

Plaintiff contends that in developing the RFC, the ALJ did not properly evaluate the opinions of Thomas Basch, M.D.  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

For claims filed after March 17, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  Now, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The ALJ addressed Dr. Basch's opinion as follows:

In March 2019, Dr. Basch opined the claimant would not have been able to perform work requiring lifting of 50 pounds or more in late 2013 and early 2014 due to pain and deterioration of her back (Ex. D16F/14). He assessed the claimant could have sometimes performed work being on her feet most of the days or using foot controls a lot with lifting at most 20 pounds with 10 pounds on a fairly regular basis; however, he stated that on other days, the claimant would not have been able to perform this work (Ex. D16F/15). He opined that barring any kind of exacerbation in her pain, the claimant could have done work that was sitting most of the day or sit/stand with lifting only 10 pounds (Ex. D16F/16-l 7). He noted she would have missed at least two days a month, indicating she likely would have missed more (Ex. D16F/16). He stated there would have been days when her pain would have made it impossible for her to focus or perform, noting she would have gone home early on those days (Ex. D16F/16). He indicated her condition is worsening, but noted this worsening occurred sometime between 2014 and 2017 (Ex. D16F/17). He noted her pain was definitely present prior to 2014 (Ex. D16F/18).

Dr. Basch had the opportunity to participate in the care of the claimant. The claimant has a long history of treatment with Michigan Pain Consultants, Dr. Basch's employer (Ex. D1F-D16F).  However, this statement was taken almost five years after the date last insured. The examination performed at Michigan Pain Consultants in February 2014, during the period from the alleged onset date through the date last insured, appears to have been performed by Ms. Irving, with Dr. Basch cosigning the document (Ex. D5F/1-4). The claimant testified she usually saw a physician assistant in Dr. Basch's office during the relevant period. The statements of Dr. Basch are not well supported by or consistent with the objective evidence for

that period. As noted above, during an evaluation at Michigan Pain Consultants in February 2014, the claimant had normal muscle tone and lower extremity strength with a non-antalgic, unassisted gait and negative straight leg raise testing (Ex. D5F/3). Despite alleging pain that was a 10 on a 10-point scale, she presented without acute distress (Ex. D5F/1-2). Previously, in December 2013, the claimant denied or did not report having back pain, presenting with no tenderness upon evaluation (Ex. D7F/19-20). She also had normal range of motion and strength with no deformity on an evaluation of the musculoskeletal system (Ex. D7F/20). Dr. Basch's assessment is also inconsistent with the treatment record for the relevant period, such that the claimant's treatment during that period was relatively conservative, consisting primarily of medication with no evidence of emergent evaluation of uncontrolled back pain despite emergent treatment for other complaints (Ex. D5F/1-4 and D7F/19-21). Additionally, the record documents improvement with treatment. Specifically, in February 2014, Ms. Irving noted the claimant reported improvement in her pain with ice, heat, and medication, indicating her pain was improved by approximately 50 percent with pain management and that her physical function was improved (Ex. D5F/1). Therefore, the undersigned finds the sworn statement of Dr. Basch is not persuasive.

PageID.60.

The relevant time period in this case is only a few months, from December 7, 2013 to March 31, 2014.  The ALJ's evaluation of Dr. Basch's opinion is supported by substantial evidence.  Accordingly, this claim of error is denied.

### C.    The ALJ failed to properly consider plaintiff's impairment of morbid obesity.

Plaintiff contends that the ALJ did not adequately address the limitations caused by her obesity.  As one court explained,

> The social security administration deleted obesity from the Listing of Impairments and views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. Soc. Sec. Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002). The ruling provides guidance for evaluating a claimant's obesity, but does not create a separate procedure requiring the Commissioner to consider obesity in every case. *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006).

*Austin v. Commissioner of Social Security*, 714 Fed. Appx. 569, 573-74 (6th Cir. 2018).

The ALJ addressed plaintiff's obesity in part as follows:

9

Pursuant to SSR 02-1p, as the claimant has at all times relevant to this decision been diagnosed as obese, the undersigned considered the impact of this claimant's obese state in determining whether the impairments were of such severity as to meet or medically equal the relevant Listings. More specifically, the *Clinical Guidelines* recognize three levels of obesity, based on body mass index (BMI): Level I includes BMI's of 30.0-34.9; Level II includes BMI's of 35.0-39.9; and, Level III, termed "extreme" obesity and representing the greatest risk of developing obesity-related impairments, includes BMI's greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss. In February 2014, the claimant weighed 347 pounds (Ex. D5F/2). Based on her reported height of five feet and six inches, she had a BMI of 56, which is consistent with Level III obesity. . . .

Prior to the date last insured, the claimant had some limitations from morbid obesity; however, the objective medical evidence of record for that period did not support the extent of the claimant's alleged limitations. As demonstrated above, the prior Administrative Law Judges determined the claimant has a severe impairment of morbid obesity, with the record documenting a diagnosis of morbid obesity during the previously adjudicated period (Ex. D1A/6-9; D3A/7-10; and Ex. D5F/ 15). In February 2014, the claimant weighed 347 pounds (Ex. D5F/2). Based on her reported height of five feet and six inches, she had a BMI of 56, which is consistent with obesity. Upon evaluation, her abdomen appeared obese (Ex. D5F/2). The record indicates that prior to the alleged onset date, bariatric surgery was recommended but declined (Ex. D5F/12 and 23). Pursuant to the Regulations, the undersigned considered how weight affected the claimant's ability to perform routine movement and necessary physical activity within the work environment. Obesity can lead to limitation of function. The effects of obesity may not be obvious. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. The undersigned considered any added or accumulative effects the claimant's obesity played on her ability to function, and to perform routine movement and necessary physical activity within the work environment.

PageID.53-54.

The record reflects that the ALJ considered the effects of plaintiff's obesity consistent with the regulations.  The RFC applicable to plaintiff during the relevant time period limits her to light work with a number of restrictions.  Accordingly, plaintiff's claim of error will be denied.

**D.** **The ALJ committed reversible error by erroneously evaluating plaintiff's credibility.**

As an initial matter, credibility is no longer used in the agency's terminology.  In

SSR 16-3p, the agency announced that:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory
> policy, as our regulations do not use this term.  In doing so, we clarify that
> subjective symptom evaluation is not an examination of an individual's character.
> Instead, we will more closely follow our regulatory language regarding symptom
> evaluation.

SSR 16-3p, 2016 WL 1119029 at *1-2.

The gist of plaintiff's claim is that the ALJ improperly evaluated her subjective

complaints.  Plaintiff's objection appears based in part on the ALJ's use of "an old standby of

boilerplate language":

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements concerning the
> intensity, persistence, and limiting effects of these symptoms are not entirely
> consistent with the medical evidence and other evidence in the record for the
> reasons explained in this decision (PageID.57).

Plaintiff's Brief at PageID.933. Plaintiff cites *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir.

2014) for the proposition that the implication in this "pernicious" boilerplate "is that the

assessment of the claimant's ability to work preceded and may invalidate the claimant's testimony

about his or her ability to work. Actually that testimony is properly an input into a determination

of ability to work." *Id*.   However, plaintiff has not developed an argument that this sentence

creates a structural defect so significant that it requires the reversal of the ALJ's decision entered

in this case.  "It is not sufficient for a party to mention a possible argument in a most skeletal way,

leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th

Cir. 1997).

In evaluating plaintiff's claim, ALJ Condon found that "the claimant's statements

concerning the intensity, persistence, and limiting effects of her alleged symptoms are not fully

11

supported by the record (SSR 16-3p)." PageID.59. SSR 16-3p provides in part that "our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304 at *11 (Oct. 25, 2017).

In reaching this determination ALJ Condon found: that plaintiff "reported and/or demonstrated improvement from her conservative treatment" such as ice, heat and medication (PageID.58); that "the medical evidence of record for the period from the alleged onset date through the date last insured does not show that the claimant reported sedation or sleepiness from then-prescribed medications" (PageID.58); and, that he considered plaintiff's ability to afford treatment (PageID.58).

The ALJ considered plaintiff's activities of daily living at length,[2] stating:

> The undersigned also considered the claimant's activities of daily living, the alleged limitation of which is not consistent with the medical evidence of record for the period from December 7, 2013 through March 31, 2014. In March 2018, almost four years after the date last insured, the claimant indicated she laid down during the day (Ex. D5E/2). She claimed she did not perform household chores except for washing dishes (Ex. D5E/3-4). She stated she used a motorized cart when shopping (Ex. D5E/4). She claimed she could not do her past hobbies (Ex. D5E/5). At the hearing, she noted her husband and daughter perform the household chores except for washing dishes and preparing meals. She asserted she has difficulty standing to wash dishes. She indicated she is unable to drive long distances, asserting she was in bed for two days after driving less than an hour to visit a nephew around Christmas. She claimed that she would have been in bed for a day after driving a long distance prior to the date last insured.

> Although the claimant has described daily activities that are fairly limited, three factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Secondly,

---

[2] *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

even if the claimant's daily activities were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.  Thirdly, the information about activities of daily living as presented in the March 2018 adult function report and at the hearing was provided more than three years after the date last insured and may not accurately reflect the claimant's functioning during the period prior to the date last insured. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

PageID.58-59.

It is well established that evaluation of a claimant's subjective complaints remains peculiarly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987).  Here, the ALJ's evaluation of plaintiff's reported symptoms is supported by sufficient evidence.  Accordingly, plaintiff's claim of error will be denied.

## IV.    CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**.  A judgment consistent with this opinion will be issued forthwith.

Dated:  March 8, 2022                              /s/ Ray Kent
                                                   United States Magistrate Judge